**WASHINGTON HOSPITAL CENTER, Plaintiff,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO, Defendant.**

**WASHINGTON HOSPITAL CENTER, Plaintiff,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO, Defendant.**

**WASHINGTON HOSPITAL CENTER, Plaintiff,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO, Defendant.**

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO, Plaintiff,**

v.

**WASHINGTON HOSPITAL CENTER, Defendant.**

**Civ. A. Nos. 83–0700, 83–0818, 83–1192 and 83–1892.**

United States District Court, District of Columbia.

Sept. 30, 1983.

Edward J. Krill, Washington, D.C., for Washington Hosp. Center.

Robin M. Gerber, Washington, D.C., for the Union.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

These four cases involve disputes between Washington Hospital Center (Hospital) and the Service Employees International Union, Local 722 of the AFL–CIO (Union) regarding the arbitrability of certain issues. In three cases, the Hospital has requested the Court to vacate arbitrators' awards, claiming that in each instance the

arbitrator exceeded his authority, and the Union has counterclaimed for enforcement of the awards. Cross motions for summary judgment are pending. In the fourth case, No. 83–1892, the Union is suing under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and Section 4 of the United States Arbitration Act, 9 U.S.C. § 4. It seeks to require the Hospital to arbitrate in conformity with a collective bargaining agreement (Agreement) between the parties. In that case, the Hospital has filed a counterclaim for damages and injunctive relief, and the Union has moved for summary judgment, which the Hospital opposes.

In all four instances, the position of the Union will be upheld and that of the Hospital rejected.

I

No. 83–0700 (the "Unit Clerks" case) involves a grievance filed by the Union on behalf of all unit clerks employed at the Hospital based on increased duties and responsibilities allegedly justifying reclassification. The Hospital requested dismissal of the grievance for being untimely, a class grievance (which it claims is not a proper grievance under the Agreement), procedurally defective, and outside the scope of the grievance and arbitration procedure. The arbitrator found the unit clerks' grievance arbitrable, and the Hospital seeks to vacate.

No. 83–0818 (the "Holiday Pay" case) concerns the Hospital's policy of scheduling an employee who works on a holiday for a day off sometime during the holiday week, a policy which the Union claims violates the Agreement's provisions governing holiday pay. The arbitrator ruled in favor of the Union, and the Hospital asks the Court to overturn that decision, claiming that the Union's grievance was untimely, and that

the award should have been limited to those employees who signed the grievance.

No. 83–1192 (the "Johnnie Green" case) involves a grievance filed by the Union on behalf of an employee who requested his reclassification as a pulmonary laboratory technician since he had allegedly been performing the duties of that position for 3½ years. The arbitrator ruled for the employee.[1] The Hospital contends that the grievance was untimely, and that it was not arbitrable, contending that there is no provision in the Agreement which would allow for personal pay rates not set forth in the schedule of pay rates in the Agreement. It also seeks to vacate the pay rate awarded to the grievant by the arbitrator as not being supported by the record.

With respect to all the cases, the Hospital concedes, as indeed it must, that arbitration as a means of resolving labor disputes is favored and that courts will, except in unusual circumstances, refrain from reviewing the merits of an arbitration award. See *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("*Steelworkers Trilogy*"). In the Hospital's view, however, such circumstances are present here because the several arbitrators[2] exceeded their authority. A careful review of the facts and issues in the three cases indicates that the Hospital's argument concerning extraordinary circumstances merely masks its all-too-ordinary displeasure with the decisions of the arbitrators on the merits.

In each instance, there was ample support in the Agreement for the arbitrator's position on the merits. The subject

---

**1.** The award directed the parties to meet and negotiate a personal pay rate for the grievant, who could perform some but not all of the tasks required of a pulmonary laboratory technician. When the Hospital refused to meet with the Union pursuant to the award, the arbitrator held a second hearing and determined the grievant's pay rate.

**2.** Each of the three cases was decided by a different arbitrator.

matter of the Unit Clerks case is clearly within section 9.1 of the Agreement, which defines a grievance as any disagreement "concerning any matter relating to wages, rates of pay, hours of employment or other conditions of employment ...." In the Holiday Pay case, the arbitrator simply fashioned a remedy to put an end to what he found a deliberate nullification by the Hospital of an express contractual benefit. With regard to the Johnnie Green case, the arbitrator's decision simply concerned the rate of pay appropriate for the duties the grievant performs, and his remedy contravenes no express language in the Agreement.[3]

▮▮▮ The arbitrator's procedural decisions are also quite reasonable, and not at all contrary to the express language of the Agreement. On the issue of timeliness, the arbitrators in the Unit Clerks case and the Holiday Pay case found that there were continuing violations and that therefore the grievances were not filed in an untimely fashion—reasons for excusing alleged untimeliness that are as common in judicial as in arbitration proceedings. In the Johnnie Green case, the arbitrator found that the Hospital had waived the defense of untimeliness by raising it for the first time at the arbitration meeting rather than in the first or second step of the grievance procedure. As for the Hospital's objection to class grievances (the Unit Clerks case, the Holiday Pay case), nothing in the Agreement precludes them.[4] Finally, in the Unit Clerks case, where the grievance was filed at the third step of the grievance procedure, the arbitrator not inappropriately held that the Union did not violate procedural prerequisites since under the circumstances it would. have been unrealistic and futile for each and every unit clerk to file an individual grievance at either the first or second step of the grievance procedure.[5]

A leading scholar has explained,

[T]he arbitrator is the parties' officially designated 'reader' of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated omissions of the initial agreement. Thus, a 'misinterpretation' or 'gross mistake' by the arbitrator becomes a contradiction in terms. In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties and his award is their contract.

St. Antoine, *Judicial Review of Labor Arbitration Awards, A Second Look at Enterprise Wheel and Its Progeny*, 75 Mich. L.Rev. 1137, 1140 (1977). The Court of Appeals for this Circuit held similarly that only where there are procedural flaws· indicating the possibility of a miscarriage of justice may a court upset an arbitrator's award. *Lewis v. Greyhound Lines-East*, 555 F.2d 1053 (D.C.Cir.1977). See also *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971) (an award will not be vacated even though the arbitrator may have made errors of fact and law, unless it "compels the violation of law or conduct contrary to accepted public policy"). As indicated above, none of the arbitrators' decisions in these cases even remotely falls in that category.[6]

---

3. As to the arbitrator's second award assigning a pay rate to the grievant, the Hospital has offered no facts suggesting that the arbitrator relied on facts not adduced at the hearing.

4. Indeed, it would have been most impractical to require a great number of common grievants separately to pursue the same complaint.

5. Under section 9.2 of the Agreement, a grievant normally must first take up his grievance with his immediate supervisor (Step 1). If there is no response within five working days, or if the grievant is dissatisfied, the grievant may submit his grievance in writing to his department head (Step 2). If there is no satisfactory settlement at Step 2, the grievant then may take his grievance to the Hospital's Personnel Director (Step 3). The fourth and final step is arbitration.

6. Indeed, in the Holiday Pay case, the same issue here presented was previously decided in favor of the arbitrator's decision in an opinion by Judge Gasch of this Court in *Service Employees International Union, Local 722, AFL–CIO v. Washington Hospital Center*, C.A. Nos. 81–1358, 81–1366.

The Hospital appears to regard this Court as if it were a court of appeals from arbitration awards—a view which is directly counter to long-established case law and which, if continued, could undermine the arbitration process itself. The Hospital's motions for summary judgment in these three cases will be denied, and the Union's will be granted.

## II

As stated above, in No. 83–1892 the Union seeks to compel the Hospital to submit to arbitration. The Hospital claims that it never agreed to arbitrate grievances such as the three at issue: yet another grievance regarding holiday pay, a grievance filed by one Irene Porter, and another filed by one Toni Felder. More specifically, the Hospital claims that with respect to the holiday pay grievance, the Union improperly by-passed steps one and two of the grievance procedure and submitted a grievance directly to the Hospital personnel director,[7] and that class grievances are not allowed under the Agreement. Concerning the Porter and Felder grievances, the Hospital claims that the Union improperly failed to give written notice of the referral of the grievance to arbitration, to make a timely request of the Hospital to pick a panel of arbitrators, and to choose its arbitrators in a timely manner.

The issue before the Court is not which party is correct on the merits of these issues but solely who is to decide them: the arbitrators or the Court. It is quite obvious that these are issues for the arbitrators. The Hospital argues that arbitration is a matter of contract, that a party cannot be required to arbitrate concerning a matter which it has not agreed to arbitrate, and that the determination whether a

matter is subject to arbitration is for the courts to decide. That much is certainly true as a generality. See *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). But it is equally clear that disputes as to whether the appropriate procedures were followed so that the merits of the arbitration may be reached are for the arbitrator rather than a court. The Supreme Court settled this matter when it stated in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964):

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration .... Once it is determined ... that the parties are obligated to submit the subject matter of the dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

The situation discussed in *John Wiley* is the situation of the case before the Court. The issues before it—timeliness, by-passing steps in the grievance procedure, the form the grievance is to take (class grievance versus individual grievances), notice—are all clearly procedural.[8] The underlying substantive matters are clearly arbitrable, as the Hospital conceded at oral argument. In these circumstances *John Wiley* applies, and reliance on *Atkinson*, which concerns the arbitrability of substantive issues, is misplaced.[9] The Union's motion for sum-

---

7. See note 5 *supra*.

8. Indeed, *John Wiley* itself concerned claims of untimeliness and the by-passing of two steps in the grievance procedure. See also *Tobacco Workers v. Lorillard Corp.*, 448 F.2d 949 (4th Cir.1971) (whether class grievances may be brought clearly a procedural question to be decided by an arbitrator); *Operating Engineers v. Flair Builders, Inc.*, 440 F.2d 557 (7th Cir.1971),

*rev'd on other grounds,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972) (effect of intrinsic untimeliness to be determined by the arbitrator).

9. The Hospital's arguments and evidence concerning the bargaining history of the Agreement on the issues of class grievances and the proper procedures to bring a grievance, may of course be presented to the arbitrators.

mary judgment will be granted, and the Hospital's counterclaim will be dismissed.[10]

### III

In each of these cases, the Union has also requested attorneys' fees. The award of attorneys' fees to the prevailing party is, of course, the exception rather than the rule. In appropriate cases, however, they should be granted. Constant, unjustified resort to the courts is likely to undermine the integrity of the arbitration process, which depends on speed and finality. This was the concern of the Supreme Court in *John Wiley* when it held that procedural disagreements to be within the sole jurisdiction of the arbitrator:

> [S]uch delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of national labor policy.

*John Wiley*, 376 U.S. at 558, 84 S.Ct. at 918.

■ The Hospital's actions in these cases are unjustified. In Nos. 83–0700, 83–0818, and 83–1192, the circumstances underlying the decisions of the three different arbitrators are entirely unexceptional, and the Hospital's arguments to the contrary are so tortured as to border on the frivolous. Of even greater concern is the fact that the Hospital appears to have made it a practice to cause arbitration awards to be litigated in the courts again and again, regardless of the merit or lack of merit in its arguments.[11]

This Court is in agreement with the Fifth Circuit when it said:

We refuse to countenance frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions. The federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorneys' fees incurred in that effort. This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation.

*International Association of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir. 1981). These cases call for the award of attorneys' fees in order that the Hospital may be encouraged to remain within the framework of the arbitration procedures. Such fees will accordingly be awarded to the Union, which shall submit itemized accounts within fifteen days.

### ORDER

For the reasons stated in a Memorandum filed this date, it is this 30th day of September, 1983,

ORDERED That defendant's motion for summary judgment in Civil Action Nos. 83–0700, 83–0818, and 83–1192, and plaintiff's motion for summary judgment in No. 83–1892 be and they are hereby granted, and that plaintiff's motions for summary judgment in Civil Actions Nos. 83–0700, 83–818, and 83–1192 be and they are hereby denied, and it is further

ORDERED That defendant's counterclaim in Civil Action No. 83–1892 be and it is hereby dismissed, and it is further

---

10. The Hospital's counterclaim in the main simply repeats its defenses to the Union's lawsuit. To the extent that the counterclaim may be read to state additional matters, they are also appropriately for the arbitrators or for the National Labor Relations Board.

11. For example, in addition to the instant suits before the Court, the Hospital has recently caused two other suits to be brought here. In *Service Employees International Union, Local 722, AFL–CIO v. Washington Hospital Center,*

C.A. No. 82–2978 (D.D.C. May 18, 1983), and *Service Employees International Union, Local 722, AFL–CIO v. Washington Hospital Center,* C.A. No. 81–1358 (D.D.C. February 16, 1982), the Union was forced to bring suit to enforce arbitration awards against the meritless objections of the Hospital. One of the two prior cases, No. 81–1358, the identical issues as those presently before the Court in the Holiday Pay case were decided against the Hospital.

ORDERED That judgment be and it is hereby entered in favor of defendant in Nos. 83–0700, 83–0818, and 83–1192, and in favor of plaintiff in No. 83–1892, and it is further

ORDERED That defendant in Civil Action Nos. 83–0700, 83–0818, and 83–1192, and plaintiff in No. 83–1892 be and they are hereby awarded reasonable attorneys' fees in accordance with itemized accounts to be submitted within fifteen days of this Order.